IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

RONNIE WALKER,

                        Petitioner,                    **DECISION AND ORDER**

   –vs–                                       **No. 04-CV-6172(VEB)**

HERB McLAUGHLIN, Superintendent,

                        Respondent.

## INTRODUCTION

*Pro se* petitioner Ronnie Walker ("Walker") filed this habeas petition pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Supreme Court (Monroe County) on June 30, 1998. The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

## BACKGROUND

The conviction at issue stems from an incident that occurred on January 23, 1998, at Josh Lofton High School, in the City of Rochester, where Walker and the victim were students. Walker shot the victim in the neck as the victim was getting off the school bus. The victim survived, although a bullet remained lodged in his neck until about a month and a half after the incident, when it was successfully removed through surgery. Walker was convicted following a jury trial of assault in the first degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree (two count) and initially sentenced to a term of imprisonment of 15 to 20 years.

Walker, through counsel, filed a direct appeal with the Appellate Division, Fourth Department, of New York State Supreme Court. On May 2, 2001, the Appellate Division issued

a unanimous decision and order modifying the judgment of conviction. The state court

concluded that the evidence with respect to assault in the first degree was legally insufficient to

establish that the victim sustained a serious physical injury as defined in N.Y. Penal Law §

10.00(10) because "[t]he injury sustained by the victim did not create a substantial risk of death

or 'cause death or serious and protracted disfigurement, protracted impairment of health or

protracted loss or impairment of the function of any bodily organ[.]'" *People v. Walker*, 283

A.D.2d 912, 913, 725 N.Y.S.2d 259 (App. Div. 4th Dept. 2001) (quoting N.Y. PENAL LAW §

10.00(10)). Accordingly, the Appellate Division modified the judgment against Walker by

reducing the conviction of assault in the first degree to assault in the third degree, and vacating

the sentence imposed thereon. (*Id.* citation omitted). Because the conviction of first degree

assault was therefore invalid, the Appellate Division determined that the conviction of criminal

use of a firearm in the first degree, which requires commission of a class B violent felony

offense while possessing a deadly weapon, also could not stand. *Id.* (citations omitted). The court

further modified the judgment by reversing the conviction of criminal use of a firearm in the first

degree, vacating the sentence imposed thereon, and dismissing that count of the indictment.

Walker's remaining contentions on appeal were summarily dismissed as without merit. *Id.* The

matter was remitted to the trial court for re-sentencing on the conviction of assault in the third

degree. *Id.*

   Walker was re-sentenced on June 6, 2001, on the third degree assault charge to a term of

one year set to run concurrently with his sentences on the remaining three weapons-possession

convictions. The re-sentencing s reduced his overall sentence, as the first degree assault

conviction (which had been reduced to assault in the third degree) had carried the longest

sentence. Thus, after the re-sentencing, Walker's longest sentence was 7½ to 16 years on the

second degree criminal possession of a weapon conviction, Walker did not file a timely notice of

appeal. He did file a number of motions in state court before filing his federal habeas petition on

August 26, 2004.[1] *See* Petition (Docket No. 1). As grounds for habeas relief, Walker contests the

length of the prison term imposed upon re-sentencing as "harsh and excessive" and argues that

trial counsel was ineffective. In particular, Walker asserts that his attorney allegedly promised

that if allowed to represent him during re-sentencing, counsel would make certain that Walker

was released.

In his answer to the petition, respondent argues that the petition should be dismissed as

untimely, or, in the alternative, as without merit. *See* Respondent's Memorandum of Law

(Docket No. 16-1). Respondent also argues that Walker's sentencing claim is not cognizable on

federal habeas review and that his ineffective assistance claim is unexhausted because he failed

to present it to the New York state courts. *See id.* (Docket No. 16-1).

For the reasons that follow, the petition is dismissed because it is untimely. Moreover,

Walker is not entitled to have the statue of limitations period equitably tolled.

## DISCUSSION

### Timeliness

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective

on April 24, 1996, amended the federal habeas statute by imposing a one-year statute of

limitations for the filing of a habeas corpus petition seeking relief from a state court conviction.

---

[1]    Respondent agrees that by operation of the "prison mailbox rule," Walker's petition is deemed to
have been filed on the date that he signed it. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (stating that the "prison
mailbox rule" applies to *pro se* incarcerated petitioners and provides that a pleading is deemed filed on the day the
petitioner hands it over to prison officials for mailing).

*See* 28 U.S.C. § 2244(d)(1).  In most cases, and in Walker's case in particular, the limitations

period runs from "the date on which the judgment became final by the conclusion of direct

review or the expiration of the time for seeking such review." 28 U.S.C. § 2224(d)(1)(A). "The

time during which a properly filed application for State post-conviction or other collateral review

with respect to the pertinent judgment or claim is pending shall not be counted toward any period

of limitation under this subsection." 28 U.S.C. § 2244(d)(2); *see also Artuz v. Bennett*, 531 U.S.

4, 8-11 (2000), *affirming Bennett v. Artuz*, 199 F.3d 116 (2d Cir. 1999). The pendency of an

earlier habeas petition filed in *federal* court, however, does *not* toll the limitations period.

*Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). Moreover, the Second Circuit has held that the

"proper calculation of Section 2244(d)(2)'s tolling provision *excludes* time during which

properly filed state relief applications are pending but does not *reset* the date from which the

one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.2000)

(emphases added); *accord Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002).

        In this case, the one-year limitations period began running on July 6, 2001, when

Walker's time for filing a notice of appeal from his judgment of conviction expired. *Bethea*, 293

F.3d at 578 (citing N.Y. CRIM. PROC. LAW § 460.10(1))[2]; see *also Raynor v. DuFrain*, 28 F.

Supp.2d 896, 898 (S.D.N.Y. 1998). In other words, July 6, 2001, was the date of "the expiration

of [petitioner's] time for seeking [direct] review," pursuant to 28 U.S.C. § 2244(d)(2)(A), and

started the statute of limitations clock which would expire one year later, on July 6, 2002. In the

---

[2]        After Walker was re-sentenced on June 6, 2001, he did not file a timely notice of appeal from that
judgment of conviction. Although petitioner had a right to appeal from this judgment of conviction, *see* N.Y. CRIM.
PROC. LAW § 460.10(1)), state law required him to file his notice of appeal within thirty (30) days after imposition of
the sentence, *id.*, § 460.10(10)(a). Walker was sentenced on June 6, 2001, and therefore, was obligated to file and
serve his notice of appeal no later than July 6, 2001. *See* N.Y. CRIM. PROC. LAW § 460.10(1)(a).

absence of any statutory tolling under Section 2244(d)(2) or equitable tolling available to Walker

his habeas petition, filed on August 26, 2004, will be clearly untimely.

As noted above, Walker filed a number of post-conviction applications in state court; the

question is whether they were "properly filed" and served to toll the statute of limitations under

Section 2244(d)(2). Because it makes no difference as to the outcome of the timeliness

calculation, I shall assume, for the sake of argument, that the pendency of Walker's various

state-court motions tolled the one-year limitations.[3] They are discussed in turn below.

On July 9, 2001, three days after his notice to appeal expired, Walker moved in the

Appellate Division for leave to file a late notice of appeal.[4] On November 9, 2001, the Appellate

---

[3]       The issue arises as to whether 28 U.S.C. § 2244(d)(2)'s tolling provision for the pendency of a
"properly filed application for State post-conviction or other collateral review" applies to the filing of motions
seeking leave to file a late notice of appeal. If so, then Walker would be entitled to statutory tolling of the period
between July 9, 2001, and November 9, 2001. Cases in this circuit are not uniform, but most do not appear to favor
this argument, however. *See Raynor v. DuFrain*, 28 F. Supp.2d at 899 n.5 (noting that it was "unclear" under the
statutory language whether 28 U.S.C. § 2244(d)(2)'s provisions for tolling while a "properly filed application for
State post-conviction or other collateral review" is pending applies to the filing of motions seeking leave to file a late
notice of appeal and expressing the opinion that "affording petitioner such tolling was highly questionable"); *Bethea
v. Girdich*, 293 F.3d at 579 ("doubt[ing]" that a petitioner's motion to extend the time to appeal or to file a late
notice of appeal even tolls the AEDPA limitations period); *but see Jones v. Department of Corr.*, 216 F.R.D. 237,
239 (E.D.N.Y. 2003) (stating, without discussion, that the period of limitations was tolled while petitioner's state-
court application to extend the time to file an appeal was pending; motion was filed more than thirty days after, but
within one year, of date of final conviction).

[4]       The Second Circuit has held that "proper calculation of Section 2244(d)(2)'s tolling provision
excludes time during which properly filed state relief applications are pending but does not reset the date from which
the one-year statute of limitations begins to run." ) Thus, the filing of a motion to extend the time to appeal or to file
a late notice of appeal does not "restart" a habeas petitioner's time to file his federal petition pursuant to AEDPA.
*E.g., Bethea*, 293 F.3d at 578-79; *see also Raynor*, 28 F. Supp.2d at 898. In *Bethea v. Girdich*, the Second Circuit
reiterated that "state-court applications for collateral relief do not 'restart' the AEDPA limitations period" for "'[i]f
the one-year period began anew when the state court denied collateral relief, then state prisoners could extend or
manipulate the deadline for federal habeas review by filing additional petitions in state court,' thus defeating the goal
of the AEDPA to prevent undue delays in federal habeas review." 293 F.3d at 578-79 (quoting *Smith v. McGinnis*,
208 F.3d 13, 17 (2d Cir. 2000)).
          The Second Circuit held that this reasoning, applicable to collateral motions, "applie[d] at least as strongly
to motions to extend the time to appeal, which 'can be sought at any time, even many years after conviction.'" *Id.*
(quoting *Raynor*, 28 F. Supp.2d at 898). New York does provide a statutory mechanism to file a late criminal appeal
under limited circumstances, namely, where the failure to timely file "resulted from . . . improper conduct, death or
disability of the defendant's attorney, or . . . inability of the defendant and his attorney to have communicated, in
person or by mail, concerning whether an appeal should be taken . . . due to the defendant's incarceration . . . and

Division denied Walker's July 9th motion to file a late notice of appeal.

Walker's next post-conviction motion in state court was a motion for reargument of the denial of his motion to file a late appeal, filed in the Appellate Division on July 30, 2002. Respondent's Appendix X at 147 *et seq.* The Appellate Division granted Walker permission to file a late notice of appeal. *See* Appellate Division Order entered September 30, 2002, attached as Exhibit B to Petitioner's Timeliness Response (Docket No. 5). The Appellate Division directed Walker "to file and serve the notice of appeal in accordance with [New York Criminal Procedure Law §] 460.10 on or before October 30, 2002." *Id.* (Docket No. 5).[5]

Walker apparently attempted to file his notice of appeal by October 30, 2002, but was unsuccessful, as evidenced by the Appellate Division's letter dated May 9, 2003. *See* Respondent's Appendix Z-8 at 223 *et seq.*; Exhibit C to Petitioner's Timeliness Response (Docket No. 5). The court informed Walker that it had received a copy of a notice of appeal addressed to that court and to the district attorney, along with an affidavit of service of the notice of appeal on the district attorney, sworn to October 18, 2002. *See id.* In addition, the Appellate Division noted that it had received Walker's application to appeal as a poor person dated April 18, 2003 (Respondent's Appendices Z-7, at 210; Z-8, at 223). However, the Appellate Division stated, because Walker had not filed his notice of appeal with the Monroe County Clerk's Office, as required by state law under New York Criminal Procedure Law § 460.10, there was "no

through no lack of due diligence or fault of the attorney or defendant." N.Y. Crim. Proc. Law § 460.30(1)(a), (b). That mechanism itself imposes a time limit of one year "after the time for the taking of such appeal has expired." N.Y. Crim. Proc. L. § 460.30(1); *see also People v. Corso*, 40 N.Y.2d 578, 580-81, 388 N.Y.S.2d 886, 357 N.E.2d 357 (1976); *Restrepo v. Kelly*, 178 F.3d 634, 636 (2d Cir. 1999). Walker's submission of a motion to file a late notice of appeal on July 9, 2001, therefore did not "restart" the statutory clock, which had begun running on July 6, 2001.

[5]        The statutory clock began to run again and, as noted above, Walker's one-year period in which to file his habeas petition was set to expire on July 6, 2002.

appeal pending before [the court]." *Id.* (Docket No. 5). Walker was instructed that if he still

wanted to file a late appeal, he should make a motion to amend the order of the Appellate

Division entered September 30, 2002, and request and extension of time to file a notice of appeal

with the Monroe County Clerk's Office. *See id.* (Docket No. 5) If that motion to amend were

granted, Walker then could move for permission to appeal from the judgment of conviction

entered June 6, 2001. *See id.* (Docket No. 5). The Appellate Division also returned Walker's

improperly filed briefs to him. *See* Respondent's Appendix Z-6, at 209.

　　　　After receiving the Appellate Division's letter of May 9, 2003 letter giving instructions

concerning re-filing, Walker submitted to that court an affidavit sworn to May 20, 2003, along

with a notice of motion to extend his time to take an appeal. *See* Respondent's Appendix Z-9 at

225 *et seq.*; *see also* Appellate Division Order entered March 2, 2004, attached as Exhibit C to

Petitioner's Timeliness Response (Docket No. 5). This motion was denied by the Appellate

Division "as untimely" in an order entered March 2, 2004. *Id.* (Docket No. 5).[6]

　　　　Walker's next filing was his federal habeas petition, which he signed and dated on

August 26, 2004. Between the commencement of AEDPA's statute of limitations period on July

6, 2001, and August 26, 2004, 1147 days elapsed. In calculating the tolling periods to be

---

[6]　　　　In the meantime, on June 9, 2003, while Walker's May 20, 2003 motion to re-extend the time to
take an appeal was pending in the Appellate Division, Walker filed in the trial court a motion under C.P.L. § 440.20
to set aside his sentence on the ground that it was harsh and excessive and violative of his constitutional right to due
process. *See* Respondent's Appendix Z-10 at 234 *et seq.* The trial court denied the Section 440.20 motion in a
Decision and Order entered October 24, 2003, finding that his claims were without merit. C.P.L. § 440.20 Order,
attached as Exhibit D to Petitioner's Timeliness Response (Docket No. 5); Respondent's Appendix Z-13 at 259 *et
seq.* Leave to appeal to the Appellate Division was denied on February 2, 2004. Respondent's Appendix Z-16 at 288
*et seq.*; Appellate Division Order entered 2/2/2004, attached as Exhibit D to Petitioner's Timeliness Response
(Docket No. 5). Because this C.P.L. § 440.20 motion overlaps the pendency of the motion to re-extend the time to
appeal, it does not appear to add anything to the tolling analysis. I note that Walker filed a second C.P.L. § 440.20
motion in November 2004, but because this was filed after his habeas petition was filed, it is immaterial to the
timeliness calculation.

afforded to Walker, I have assumed for purposes of argument only that Walker's state-court post-conviction motions filed between these two dates served to toll the statute of limitations, pursuant to 28 U.S.C. § 2244(d)(2).[7] Thus, I have assumed that Walker is entitled to 124 days of tolling while his motion to file a late notice of appeal was pending from July 9, 2001, through November 9, 2001; and to 565 days of tolling with regard to his motion for reargument (*i.e.*, from July 30, 2002, through March 2, 2004).[8] This results in a total of 689 days of tolling. Crediting that against the 1147 days that elapsed on the statutory clock once it began running on July 6, 2002, I find that 458 days are still chargeable against Walker. His habeas petition therefore was filed 93 days (three days and three months) late and is clearly untimely.

## Equitable Tolling

The one-year AEDPA filing limitation is not jurisdictional and, under certain circumstances, may also be equitably tolled. *Acosta v. Artuz*, 221 F.3d 117, 119, 122 (2d Cir.

---

[7]    However, the Court cannot assume that there was any tolling during the time that Walker had submitted his application to proceed as a poor person on April 18, 2003, until May 20, 2003, as the Appellate Division expressly stated in its May 9th letter that there was no appeal pending during that time since Walker had failed to properly file his papers by the court-ordered deadline of October 30, 2002.

[8]    Based on the correspondence detailed, and assuming *arguendo* that the motion for reargument tolled the statute of limitations, the period from July 30, 2002, (the date of filing of the motion for reargument) through October 30, 2002 (the deadline by which Walker had to file the late notice of appeal) would be tolled. Looking at any further tolling potentially occasioned by Walker's reargument motion filed on July 30, 2002, one could argue that the statute of limitations began running again on October 31, 2002, since the Appellate Division apparently found that the motion for reargument ceased to be pending when Walker failed to file his papers properly by October 30, 2002. On the other hand, petitioner could argue that the statute of limitations should be statutorily tolled from the time that he filed his application to proceed as a poor person with regard to the reargument motion on April 18, 2003. Walker, having thought that he timely filed his brief in October 2002, did not know that the Appellate Division had rejected the papers on the basis that he had not filed an original with the Monroe County Clerk's Office. *See Diaz v. Kelly*, 515 F.3d 149, 154-44 (2d Cir. 2008) (noting that *statutory* tolling under § 2244(d)(2) ends upon the entry of a state court's order, rather than its subsequent receipt; however, *equitable* tolling of AEDPA's statute of limitations can be based on a prolonged delay by a state court in sending notice of a ruling that completes exhaustion of state court remedies). Therefore, when he filed his *in forma pauperis* application in April 2003, Walker apparently thought his appeal was pending. However, even if I were to toll the entire period from July 30, 2002, until March 2, 2004, when the Appellate Division denied Walker's re-filed motion for reargument, the petition still would be untimely.

2000) (citing *Smith v. McGinnis*, 208 F.3d at 17). The petitioner bears the burden of demonstrating that (i) "extraordinary circumstances prevented him from filing his petition on time," *Smith*, 208 F.3d at 17, and (ii) he "acted with reasonable diligence throughout the period he seeks to toll," *id.. See also Pace v. DiGuglielmo*, 544 U.S. 408, 417-18 & 418 n.8 (2005) (assuming without deciding that equitable tolling is available under AEDPA). Equitable tolling also "requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). Thus, the petitioner must show that extraordinary circumstances "prevented" him from filing on time. *Id.* at 133-34.

Consideration of the timeline of Walker's filings in state court convinces me that equitable tolling is not warranted here. First, after his motion to file a late appeal was denied on November 9, 2001, Walker waited 263 days before seeking reargument of this motion on July 30, 2002. (The one-year statute of limitations expired on July 6, 2002, as noted above.) I note that Walker's motion for reargument ultimately was granted on September 30, 2002, and he was directed to file his late appellate brief on or before October 30, 2002. In his Timeliness Response, Walker states that "due to improper filing procedures [he] could not continue the appeal process" and that "due to unknown reasons [his] notice of appeal was not properly filed with the Trial Courts." Petitioner's Timeliness Response, ¶4 (Docket No. 5). However, based on the documentation submitted by both Walker and respondent to this Court, it appears that Walker failed to comply with the applicable state-court rules for filing appeal papers contained in New

York Criminal Procedure Law § 460.10 for filing an original copy with the clerk of court;  for

Monroe County Court, that is the Monroe County Clerk's Office. This was explained to Walker

by the Appellate Division in its letter to him dated May 9, 2003. Although Walker had filed

copies of his brief with the Appellate Division and the Monroe County District Attorney's

Office, the failure to file with the clerk of the court rendered the filing a nullity.  Having found

that the brief had not been timely and properly filed in accordance with its order of September

30, 2002, the Appellate Division returned the appeal documents to him.

Walker appears to argue that he is entitled to have the statute of limitations tolled because

he is "a layman of the law. . . ."  Petitioner's Timeliness Response, ¶9 (Docket No. 5). However,

courts in this circuit have routinely declined to toll the statute of limitations on this basis, which

is not considered "rare" or "extraordinary." *See Smith v. McGinnis*, 208 F.3d at 18 (finding no

extraordinary or exceptional circumstances warranting equitable tolling where petitioner argued

that he could not file his federal petition until he exhausted his state remedies; that he filed his

state *coram nobis* petition and then filed his federal habeas petition only 87 days after the state

denied collateral relief; and that he was *pro se*); *Smith v. Graham*, No. 06CV3527 (BMC), 2006

WL 3065586, at *2 (E.D.N.Y. Oct. 27, 2006) (where petitioner affirmed that he was "'a layman

and 'thought' that [he] was following all of [his] procedures,'" district court found that such

circumstances were not extraordinary and did not warrant equitable tolling); *Francis v. Miller*,

198 F. Supp.2d 232, 235 (E.D.N.Y. 2002) (stating that petitioner's ignorance of the law and legal

procedures are not extraordinary circumstances); *Armand v. Strack*, No. 98 Civ. 6650, 1999 WL

167720, at *5 (E.D.N.Y. Feb.19, 1999) (noting that lack of access to law clerks, illiteracy, lack

of English fluency and ignorance of the law have all been considered and rejected by courts as

insufficient to demonstrate exceptional circumstances); *Fennell v. Artuz*, 14 F. Supp.2d 374, 377 (S.D.N.Y.1998) (holding that equitable tolling based on excuses common among prisoners, such as lack of education and lack of familiarity with legal research, would undermine AEDPA's statute of limitations). Walker's status as a *pro se* litigant cannot be considered an "extraordinary circumstance" and equitable tolling therefore is not warranted here.

**Compliance with Western District of New York Local Rule 5.2**

On January 25, 2008, a copy of the order reassigning this case to the undersigned was mailed to Walker at Orleans Correctional Facility, his address of record. On February 1, 2008, this article of mail was returned as undeliverable, with the notation that Walker "has been released." *See* Docket Entry dated 2/1/2008. However, a search of the Inmate Information Database maintained by the New York State Department of Correctional Services ("NYSDOCS") indicates that Walker (D.I.N. 98-B-1460) is in custody, and was "received" back into custody at Willard Correctional Facility on February 1, 2008, based on a parole violation.[9] *See* NYSDOCS Inmate Population Information Search website *at* http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ3/WINQ130 (last visited Apr. 1, 2008).

Walker is reminded that as a matter of this District's Local Rules, both attorneys and *pro se* litigants have an obligation to immediately notify the Court and opposing parties of any change in their address or contact information. Local Rule of Civil Procedure 5.2(d) requires that

---

[9]        Walker's petition satisfies the "in custody" requirement of the habeas statute as he was incarcerated pursuant to the judgment of conviction under attack here at the time he filed his petition in this Court. Furthermore, the fact that a prisoner is paroled does not does not deprive a habeas of jurisdiction to adjudicate the prisoner's attack on his underlying conviction, or render the petition moot. *Jones v. Cunningham,* 371 U.S. 236 , 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)*; Peck v. United States,* 73 F.3d 1220, 1224 n. 5 (2d Cir.1995). Finally, the fact that Walker is incarcerated pursuant to a parole violation has not mooted his challenge to his underlying state court conviction given that given that collateral consequences are presumed to flow from a felony conviction after incarceration under that conviction has ended.

a party proceeding *pro se* "must furnish the Court with a current address at which papers may be

served on the litigant. . . . . In addition, the Court must have a current address at all times.  Thus

a *pro se* litigant must notify the Court immediately in writing of any change of address.  *Failure*

*to do so may result in dismissal of the case with prejudice.*"  Local Rule of Civil Procedure

5.2(d) (emphasis supplied). Federal courts are vested with the authority to dismiss a plaintiff's

action with prejudice because of his failure to prosecute. *See* FED. R. CIV. PROC. 41(b) ("For

failure of the plaintiff to prosecute or to comply with these rules or any order of court, a

defendant may move for dismissal of an action or of any claim against him. . . . Unless the court

in its order for dismissal otherwise specifies, a dismissal under this subdivision and any

dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for

improper venue, operates as an adjudication upon the merits."). As a *pro se* litigant, Walker

received a packet of information from the District Court Clerk advising him about the

requirements of all of the Local Rules, including Local Rule 5.2(d).

Although authorized to dismiss Walker's petition based on his failure to keep the Court

apprised of his current address, the Court declines to do so at this juncture because it has actual

knowledge of his whereabouts. Based on the information obtained from the NYSDOCS website,

the Court will send a copy of this Order to Walker at Willard Correctional Facility. Walker is

ordered to confirm his present address with the Court within fifteen (15) days of his receipt of

this Order.  His failure to do so will result in the case being closed without any further action

from the Court.

## CONCLUSION

Accordingly, Walker's petition for a writ of habeas corpus is dismissed as time-barred. A

certificate of appealability shall not issue because petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112-13 (2d Cir. 2000). The Clerk of the District Court is directed to send a copy of this Order to Walker at Willard Correctional Facility, where it appears that he is currently housed.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:        April 4, 2008
                     Buffalo, New York.